# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN LINDSAY, | : | |
| Plaintiff, | : | No. 3:20-cv-173 (KAD) |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT | : | |
| HEALTH CENTER, et al., | : | |
| Defendants. | : | |

## INITIAL REVIEW ORDER

**Preliminary Statement**

Plaintiff, Kevin Lindsay ("Lindsay"), currently confined at Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Lindsay alleges that the defendants were deliberately indifferent to his medical needs. The defendants are the University of Connecticut Health Center, Dr. Omprakash Pillai, Corrigan Medical, and Corrigan Correction Staff. Lindsay indicates within the complaint that he names the individual defendants in their individual capacities only. Although he states generally that he seeks damages and injunctive relief, Doc. No. 1 at 6, he lists only damages in his prayer for relief, *id.* at 30-31. The complaint was received on February 7, 2020. Lindsay's motion to proceed *in forma pauperis* was granted on February 12, 2020.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a

defendant who is immune from such relief.  *Id.*  In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**[1]

During a sick call visit to the MacDougall Correctional Institution ("MacDougall") medical department on December 22, 2014, Lindsay reported that he had to strain during bowel movements and requested a prostate examination and a colonoscopy. Doc. No. 1 at 12 ¶ 1 & 18-19 ¶¶ 1-5. Dr. Pillai ordered that a stool sample be collected and tested. *Id.* at 13 ¶ 2 & 19 ¶ 6. The test showed that a prostate indicator was high, registering 4.4 on the range of 0.0 to 4.0, but no further tests were ordered. *Id*. at 13 ¶ 3 & 19 ¶ 6. From 2014 until 2016, no further tests were

---

[1] Lindsay's complaint consists of several documents submitted together. The documents are entitled: "Cause of Action," Doc. No. 1 at 1-5: "Jury Trial Demaned verified Complaint for Damages and Injunctive Relief," *Id.* at 6-9; and "Statement of Claim/Caption," *Id.* at 10-32. Each document includes a description of facts underlying Lindsay's claim. Although the descriptions describe the same alleged mistreatment, each includes information not included in others. The various descriptions also attribute actions to different persons and state that events occurred on different dates. The court refers to information from all three descriptions to present a complete description of the incidents underlying the complaint. Where Lindsay has submitted medical reports clarifying the dates or events, the court refers to the medical reports.

performed and no concerns were communicated to Lindsay regarding his prostate. *Id*. at 13 ¶ 4.

On February 22, 2017, Lindsay was transferred to Corrigan. *Id*. at 13 ¶ 5 & 19 ¶ 7. During a medical visit for other issues, Lindsay sought a "screening" because he was experiencing stomach pain. *Id.* When he told the medical provider that he was still waiting for a colon exam, the provider said that no test had been ordered or scheduled. *Id.*

Two years later, on February 5, 2019, May 27, 2019, June 26, 2019, and July 11, 2019, Lindsay submitted requests to the medical department seeking a colonoscopy and treatment for his stomach pains. *Id.* at 13 ¶ 6 & 19 ¶ 8. In the May 27 request, Lindsay stated that he has been prescribed 3 Tylenol pills 3-4 times per day. *Id.* at 14 ¶ 8. He complained that nothing was being done to address his stomach pains and severe cramping. *Id.* Lindsay alleges that Nurse Kayla told him that he had been on the list to see "the provider" since March. *Id*. at 14 ¶ 8 & 19 ¶ 9. On June 26, 2019, Lindsay reported that he had seen the doctor on May 14, 2019, before he submitted the prior request. *Id*. ¶ 9. Lindsay asked that the Tylenol prescription be discontinued because it did not ease his stomach pain and complained of difficulty urinating. *Id*. at 14 ¶ 9 & 19 ¶ 10.

On August 19, 2019, Lindsay met with APRN Williams. *Id.* at 14 ¶ 10 & 20 ¶ 11. She told him that kidney, liver, and thyroid tests were good, but his prostate antigen was high. *Id*. at 14 ¶ 10 & 3 ¶ 6. She said this could be a reason for Lindsay's difficulty urinating and placed him on the list to see a urologist to determine whether a prostate biopsy was needed. *Id*. at 15 ¶ 11. Lindsay was prescribed Tamsulosin to help with urination. *Id*. at 15 ¶ 11 & 3 ¶ 6. An x-ray also showed that Lindsay was constipated. *Id.* at 15 ¶ 11.

On August 19, 2019, APRN Williams requested an appointment at the University of

3

Connecticut Health Center. Id. at 20 ¶ 12. Lindsay alleges that, sometime before November 25, 2019, he learned that the appointment had not been scheduled and APRN Williams did not understand why. *Id.* at 15 ¶ 12. Lindsay states, however, that he was seen at the University of Connecticut on November 2, 2019. *Id.* at 15 ¶ 13 & 20 ¶ 13. He was seen by a urologist who told Lindsay that his prostate had doubled in size in a short period of time. *Id.*

On October 30, 2019, Lindsay was instructed to maintain a urination journal, recording urine output. *Id.* at 45. Between November 4 and 24, 2019, Lindsay's urine output dropped and his pain increased. *Id*. at 17 & 20 ¶ 18. No one monitored the report to see the decline in urine production. *Id.* at 16, 17, 22. November 24, 2019 at 8:30 p.m., was the last time Lindsay was able to urinate. *Id.* at 17 & 20 ¶ 16.

On November 21 or 24, 2019, Lindsay told the nurse on the "pill line" that he was experiencing a lot of pain and had difficulty urinating. *Id*. at 22 & 3 ¶ 9. She told him to drink a lot of water and try to relax. *Id.*

About 1:00 a.m. on November 25, 2019, Lindsay woke with an urge to urinate. *Id.* at 15 ¶ 14 & 20 ¶ 18. He was able to produce only a few drops. *Id.* at 15 ¶ 14 & 20 ¶ 20. He experienced severe pain that caused his legs to shake. *Id.* at 15 ¶ 14 & 3 ¶ 13. This continued until custodial staff opened his door for morning recreation between 8:30 a.m. and 9:30 a.m. *Id*. at 15 ¶ 14, 22 & 4 ¶ 14. Officer Conrad noticed that something was wrong and immediately summoned medical staff. *Id*. Although security staff made rounds every half hour, no officer checked on Lindsay. *Id.* at 5 ¶ 18.

Lindsay alleges that medical staff had tried to insert a catheter to release pressure on his stomach. *Id.* at 16, 48. Staff was unaware that Lindsay's enlarged prostate had caused his bladder

4

to collapse. *Id.* at 16. Nurse Shaw tried to straighten the catheter and made a hole in Lindsay's bladder. *Id.* at 17 & 8 ¶ 1. She was assisted by Nurse Evion or Ellon. *Id*. at 4 ¶ 16. This caused "massive blood clot evacuation and fulguration of bleeding" when Lindsay arrived at the hospital emergency room. *Id.* at 17, 49 & 4 ¶ 17. When the catheter could not be straightened, Dr. Feder ordered that Lindsay be taken to the hospital by ambulance. *Id.* at 47. Prison officials "Hog-tyed" Lindsay to an emergency stretcher before transporting him to Backus Hospital for surgery. *Id.* at 16. This process involved securing a prisoner's ankles to his handcuffs. *Id*. at 29.

Lindsay was released from the hospital and returned to the correctional facility on December 1, 2019. *Id.* at 8 ¶ 2. Lindsay was released from the infirmary on December 1 or 2, 2019. *Id.* at 24 ¶ 1. He was told to return to the medical unit immediately if anything "went wrong." *Id*. On December 2 or 3, 2019, Nurse Amy was making rounds. *Id.* at 18 ¶ 5. Lindsay complained of chest pain and asked for water. *Id.* Nurse Amy said that they did not "do water" until 8:00 a.m. and told Lindsay to get water from the toilet if he needed it sooner. *Id.*[2]

On January 2, 2020, Lindsay returned to the hospital to have the catheter replaced. *Id*. at 8 ¶ 3. Since his first catheter was changed, Lindsay has been to the medical unit only three or four times. *Id*. at 24 ¶ 2. When the catheter was replaced on January 2, 2020, Lindsay was told he had a urinary infection and was prescribed medication. *Id*. ¶ 3. The same day, Lindsay complained to Nurse Andrew about an "over hard abdomen." *Id.* at 8 ¶ 3. Nurse Andrew or Nurse Steve told Lindsay that the catheter was a slightly smaller size. *Id.* at 24 ¶ 3 & 8 ¶ 3. Lindsay experienced a lot of pain the following day. *Id.* at 24 ¶ 4. Lindsay received no treatment

---

[2] Lindsay also alleges that this interaction with Nurse Amy occurred on December 1, 2019 upon his return from the hospital. Doc. No. 1 at 8 ¶ 2.

for five days, from January 3-7, 2020. *Id.* ¶ 5. He complained to APRN Mallory and Nurse Jessica. *Id.*

On January 7, 2020, Lindsay told Nurse Jessica that his medication had run out and that he was supposed to take the medication every day. *Id.* at 25 ¶ 10. The following day, he wrote to the doctor. *Id.* ¶ 11. Lindsay was called to the medical unit that morning. *Id.* He told Nurse Andrew that APRN Williams and Nurse Mike told him that, if he was in pain, he should ask for Tylenol. *Id.* Nurse Andrew refused to provide Tylenol. *Id.*

On January 9, 2020, Lindsay was told he could use the chair from his cell and the seat cushion to protect his catheter. *Id.* at 21 ¶ 21. After viewing the unit camera, Lieutenant Standish told Officer Vega to have Lindsay move the chair from the dayroom. *Id.* At around 11:00 a.m., the lieutenant and three officers ordered Lindsay to give them the plastic air cushion and other medical supplies he had been given on December 30, 2019 at the hospital. *Id.* ¶ 22. The cushion and other items were returned to Lindsay when he was in the infirmary. *Id.* ¶ 23.

Lindsay received no treatment from January 9 through 15, 2020. *Id.* at 24 ¶ 6. Nurse Messisa changed the holding clamp that prevented the catheter from coming out. *Id.* On January 8, 2020, Lindsay submitted a medical grievance. *Id.* ¶ 7. He had received no response as of January 26, 2020. *Id.*

On January 12, 2020, Lindsay showed Officer Conrad blood in his catheter. *Id.* ¶ 26. Lindsay alleges that he had blood in his catheter for 2½ days because he had to sit on metal seats. *Id.* On January 25, 2020, he spoke to Nurse KC about the need to replace the catheter clamp and clean the area. *Id.* at 24 ¶ 9. Nurse Andrew refused the treatment that evening. *Id.* at 25 ¶ 12.

On January 25, 2020, Lindsay told Nurse KC that the catheter hold patch needed to be

6

changed. *Id*. at 9 ¶ 5. When Nurse KC said she would send Lindsay a new patch, he said he did not know how to change it and the area also had to be cleaned. *Id.* Lindsay alleges that Nurse KC was refusing treatment. *Id*.

**Discussion**

      **Class Action Certification**

Lindsay seeks permission to file "a class action sue to all parties named upon as they all played some type or role that cause him pain and suffering…." Doc. No. 1 at 1. Thus, he seeks to name a defendant class.

Federal Rule of Civil Procedure 23 provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members" if certain conditions are met. Fed. R. Civ. P. 23(a). Due process ensures procedural fairness and protects the interests of absent class members. *Bakalar v. Vavra*, 237 F.R.D. 59, 63 (S.D.N.Y. 2006) (citing *Hansberry v. Lee*, 311 U.S. 32, 42 (1940)). Due process concerns "are particularly acute in defendant class actions where the unnamed class members risk exposure to liability." *Id.* (citations omitted). Thus, closer scrutiny is required before a defendant class is certified and, in fact, defendant classes rarely are certified. *Id*. at 64 (citations omitted).

Under Rule 23(a), before a class may be certified, the moving party must establish:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law and fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Lindsay merely alleges that everyone had some role and caused him pain and suffering. He

makes no specific showing regarding any of these requirements. He does not identify a class representative. In addition, although Lindsay may have been treated by many different people, he has not demonstrated that these individuals cannot be named or joined as defendants, or that doing so would be impracticable. Accordingly, Lindsay's request to proceed against a defendant class is denied at this juncture. *See Flying Tiger Line, Inc. v. Central States, Southwest and Southeast Areas Pension Fund*, Civ. A. No. 86-304 CMW, 1986 WL 13366, at *4-5 (D. Del. Nov. 20, 1986) (declining to impose class method for adjudicating claims on defendants where plaintiffs had not shown that joinder of all defendants was impracticable).

**Defendants University of Connecticut Health Center and Corrigan Medical**

Lindsay names the University of Connecticut Health Center and Corrigan Medical Department as defendants. To state a cognizable section 1983 claim, Lindsay must allege facts showing that a person acting under color of state law deprived him of a right, privilege or immunity secured by the United States Constitution or federal law. State agencies are not persons within the meaning of section 1983. *See Bhatia v. Connecticut Dep't of Children and Families*, 317 F. App'x 51, 52 (2d Cir. 2009) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989)). The Department of Correction is a state agency and the University of Connecticut is a subdivision of the state. Units of those entities, the Medical Department at Corrigan and the University of Connecticut Health Center, also are not persons within the meaning of section 1983. *See Remillard v. Maldonado*, 3:15-cv-1714(SRU), 2016 WL 3093358, at *2 (D. Conn. June 1, 2016) (prison medical department); *Ferla v. Correctional Managed Health Care*, No. 3'15-cv-1303(MPS), 2015 WL 5826812, at *2 (D. Conn. Oct. 2, 2015) (University of Connecticut Health Center and its divisions). Accordingly, all claims against the

University of Connecticut Health Center and Corrigan Medical are dismissed.

### Dr. Pillai and Treatment at MacDougall Correctional Institution

Lindsay challenges the treatment provided to him at MacDougall by Dr. Pillai in 2014. On February 22, 2017, nearly three years before he commenced this action, Lindsay was transferred to Corrigan. Doc. No. 1 at 19 ¶ 7.

The limitations period for filing a section 1983 action in Connecticut is three years. *Thompson v. Rovella*, 734 F. App'x 787, 788-89 (2d Cir. 2018); *see also Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994) (analyzing available state limitations periods and determining that appropriate limitations period for section 1983 actions filed in Connecticut is three years).

Lindsay signed the Complaint on February 6, 2020. It was scanned and emailed to the court the same day and entered on the docket the following day. Prisoner complaints are considered filed on the day the prisoner gives the complaint to prison officials for mailing or, in this case, electronic filing. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (holding that a *pro se* prisoner complaint is deemed filed ad of the date the prisoner gives the complaint to prison officials to be forwarded to the court), *opinion modified on reh'g on other grounds*, 25 F.3d 81 (2d Cir. 1994). Thus, the limitations period commenced on February 6, 2017, three years before Lindsay signed the Complaint and, presumably, gave it to prison officials for mailing.

While the federal court looks to state law to determine the applicable limitations period, federal law controls when the cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a cause of action accrues—and the statute of limitations begins to run—"when the plaintiff can file suit and obtain relief." *Id.* (internal quotation marks and citation omitted). Thus, the Court must determine when Lindsay possessed sufficient facts about the

9

harm done to him that reasonable inquiry would reveal the cause of action. *See United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). The Court "should look to 'the time of the … act, not the point at which the consequences of the act become[] painful.'" *Coronado v. City of New York*, No. 11CV5188-LTS-HBP, 2014 WL 4746137, at *3 (S.D.N.Y. Sept. 24, 2014) (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

The federal courts also refer to state law for tolling rules. *Wallace*, 549 U.S. at 394. The Second Circuit has held that "the continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009). To assert a continuing violation in order to toll the statute of limitations, the plaintiff must allege two things, the existence of an ongoing policy that violates his constitutional rights and some "non-time-barred acts taken in furtherance of that policy." *Id.*; *see also Patterson v. Anna*, 2018 WL 340023, at *4 (D. Conn. Jan. 9, 2018) (rejecting claim of tolling under continuing violation doctrine for Eighth Amendment deliberate indifference to medical needs claim), *appeal dismissed sub nom. Patterson v. Okonkwo*, 2018 WL 3689966 (2d Cir. May 17, 2018).

Lindsay alleges that Dr. Pillai failed to order further tests and a prostate examination when the 2014 test results showed an elevated prostate antigen. Lindsay submits documents showing that he was seen in the Chronic Disease Clinic on February 6, 2015. Doc. No. 1 at 36. Although he complained about urological issues, he did not mention his prostate concerns. Also, a copy of an abdominal x-ray showing no abnormalities that would affect urination was sent to Dr. Pillai in August 2015. *Id.* at 37. Although Lindsay remained at MacDougall for over two years after the only alleged examination by Dr. Pillai and was obviously aware that no tests had

been ordered, Lindsay does not allege that he again requested prostate testing until he was at Corrigan. Lindsay has alleged no non-time-barred actions against Dr. Pillai or any staff at MacDougall. All claims against Dr. Pillai or unnamed personnel at MacDougall are dismissed as time-barred.

### Deliberate Indifference to Medical Needs

Lindsay claims that the defendants were deliberately indifferent to his serious medical need. Although Lindsay does not specify the medical need that underlies his claims, he alleges generally that his untreated or inadequately treated prostate condition caused his urological conditions, complications and injuries.

Lindsay is a sentenced inmate. So although he references both the Eighth and Fourteenth Amendments as bases for his deliberate indifference claim, the claim is governed by the Eighth Amendment. *See Darnell v. Piniero*, 849 F.3d 17, 29 (2d Cir. 2017). The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to a serious medical need, Lindsay must show both that his need was serious, and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." *Spavone*, 719 F.3d at 138. The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The defendants also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. They must have been actually aware of a substantial risk

that Lindsay would suffer serious harm as a result of their actions or inactions. The defendants "need only be aware of the risk of harm, not intend harm." *Id.*

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Nor does a disagreement over the treatment provided show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

Lindsay claims both a lack of treatment and a delay in treatment, either of which may be the basis for an Eighth amendment claim. *See e.g. Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233, 1999 WL 753142 (Table) (2d Cir. 1999); *Chance*, 143 F.3d 703.

Lindsay alleges that prostate issues were ignored for years and resulted in serious prostate and urological issues. The allegations regarding Lindsay's medical condition are sufficient, at this stage, to demonstrate a "serious medical need." And the allegations that his urological issues, which were caused by his untreated and enlarged prostate, were not addressed in an effective or timely manner resulting in serious complications, is sufficient to permit this claim to proceed for further development of the record.

However, Lindsay has not identified any proper defendants in this case. Although his complaint identifies various medical personnel who, he alleges, failed to provide appropriate and necessary care, he does not name any of them as defendants. Accordingly, Lindsay shall be permitted to file an Amended Complaint regarding his medical treatment at Corrigan. Lindsay shall name as defendants the persons he alleges were deliberately indifference to his serious medical need and include allegations indicating what actions each defendant took, or failed to

take, that violated his constitutional rights.

**Motion for Preliminary Injunction**

A few days after he submitted his complaint, Lindsay filed a motion for preliminary injunction stating that he is awaiting surgery on his stomach. It is unclear how this surgery is related to his other complaints and it is unclear the nature and scope of the injunctive relief he seeks. In his motion, he repeats that, following his return from the hospital after an emergency procedure on November 25, 2019, he developed an infection as a result of inadequate treatment. He returned to the hospital on January 2, 2020, to address fluid build-up in his legs. Lindsay states that he must wear special underwear for incontinence issues.

Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enterprise Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). To prevail, the plaintiff must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, ___ U.S. ___, 135 S. Ct. 2726, 2736 (2015) (internal quotation marks and citation omitted). The Second Circuit considers a showing of irreparable harm the most important requirement for an award of preliminary injunctive relief. *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995). The irreparable injury prerequisite requires proof of harm that is "actual and imminent" and "not remote or speculative." *Pisarri v. Town Sports Int'l, LLC*, 758 F. App'x 188, 190 (2d Cir. 2019) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979) (internal quotation marks omitted)).

Where the plaintiff seeks a mandatory injunction, *i.e.*, an injunction seeking to order the defendants to perform positive acts, he must meet a higher standard. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from the denial of preliminary relief." *Id.* (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiff seeking mandatory injunction must make "clear" or "substantial" showing of likelihood of success on the merits of his claim).

The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted).

Lindsay's motion is insufficient for the court to even evaluate his motion against these standards. And even if the court could make that determination, there are no remaining defendants who can provide the relief he seeks. The motion is therefore denied without prejudice. **However, because the issue involves what may be a significant medical condition for which treatment is sought, the court directs the Office of the Attorney General to inquire of the Department of Correction regarding Lindsay's current medical condition**

**and to file a Notice with the court with the results of that inquiry on or before March 8, 2020.**

**Orders**

For all the foregoing reasons, the claims against defendants University of Connecticut Health Center, Corrigan Medical, and Dr. Pillai are dismissed pursuant to 28 U.S.C. § 1915A(b).

If he wants the case to proceed, Lindsay must file an Amended Complaint regarding his medical treatment at Corrigan on or before **March 20, 2020.** Lindsay shall name as defendants the persons he alleges were deliberately indifferent to his serious medical need and include only one statement of his claim indicating what actions each defendant took, or failed to take, that violated his constitutional rights. Lindsay must file the Amended Complaint, using the Prisoner Efiling Program, on or before **March 20, 2020**. **Failure to timely file the Amended Complaint will result in the dismissal of this case without further notice from the court.** The Clerk is directed to send Lindsay an amended complaint form with this Order.

The Clerk is directed to forward a copy of this Order and Lindsay's motion for preliminary injunction to Assistant Attorney General Madeline Melchionne for compliance with the Court's directive set forth above.

**SO ORDERED** at Bridgeport, Connecticut, this 18th day of February 2020.

        /s/
        Kari A. Dooley
        United States District Judge