# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEVIN LINDSAY, <br>     Plaintiff, <br><br> v. <br><br> UNIVERSITY OF CONNECTICUT <br> HEALTH CENTER, et al., <br>     Defendants. | No. 3:20-cv-173 (KAD) |

## INITIAL REVIEW ORDER – AMENDED COMPLAINT

Plaintiff, Kevin Lindsay ("Lindsay"), currently confined at Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Lindsay alleges that the defendants were deliberately indifferent to his medical needs. By Initial Review Order filed February 18, 2020, the court dismissed the complaint because the claim against Dr. Pillai was clearly time-barred and Lindsay failed to identify any other proper defendant. Doc. No. 9. Lindsay was afforded an opportunity to file an amended complaint to identify persons responsible for his medical treatment. Thereafter, Lindsay filed a motion to amend, Doc. No. 13, and a motion to file an amended and supplemental pleading, Doc. No. 15.

In the caption of the amended complaint filed with the first motion to amend, Lindsay identifies the defendants as RN Beth Shaw, RN KC, RN Amy Manoki, APRN Loreen Williams, and RN Andrew. However, in the body of the complaint, Lindsay identifies the defendants as RN Beth Shaw, RN Amy Manoki, RN KC, APRN Loreen Williams, Dr. Feder, and Correctional Officer John Doe. The court considers all seven persons as defendants.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On February 5, 2019, Lindsay filed a second request for a colonoscopy. Doc. No. 13-1 ¶ 1. On May 27, 2019, he requested a follow-up visit with the doctor about stomach pains. *Id.* ¶ 2. The nurse told him that his name has been on the list to see the doctor since March. *Id.* On June 26, 2019, Lindsay submitted another request complaining of difficulty urinating. *Id.* ¶ 3.

APRN Williams saw Lindsay on August 19, 2019, at which time an appointment was made for Lindsay to be seen at the University of Connecticut Health Center. *Id.* ¶ 4. The examination showed that his "prostate was high" and it was suggested that this may be the cause

of his urinary issues. *Id.* A urology consult was requested. *Id.* The examination did not occur until October 30, 2019 while Lindsay's condition worsened. *Id.* The urologist ordered tests, instructed Lindsay to keep a urine journal, and gave Lindsay a urinal to measure his output. *Id.* ¶ 5.

Lindsay was supposed to be scheduled for a prostate biopsy but that did not occur. *Id.* ¶ 6. When Lindsay told APRN Williams that the appointment had not been scheduled, she did not understand why. *Id.* ¶ 6. Lindsay wrote to Nurse Julie and the biopsy was rescheduled for November 26, 2019. *Id.* ¶ 7.

On November 24, 2019, during "pill line," Lindsay told the nurse he was having difficulty urinating and that his output had dropped below 100 cc's. *Id.* ¶ 8. No one had checked his urine journal since he began keeping it on November 4, 2019. *Id.* Later that afternoon, Lindsay was unable to urinate. *Id.* ¶ 9. Medical staff advised him to drink water and rest. *Id.* No one examined him. *Id.* At 1:00 a.m., Lindsay woke to severe stomach pain. *Id.* ¶ 10. He tried to urinate but could not. *Id.* Lindsay suffered extreme pain and shock until 8:35 a.m. *Id.*

Lindsay alleges that RN Shaw made a hole in his bladder when she tried to straight catheter him without the guidance of Dr. Feder who was in the next room. *Id.* at 6-7. When blood "shot out of the catheter," Dr. Feder declared an emergency. *Id.* at 7. Lindsay was taken to the hospital by ambulance. *Id.* at 7 ¶ 2. Medical staff informed the hospital that Lindsay had been unable to urinate for a day and was scheduled for a possible biopsy the following day. *Id.* ¶¶ 3-4. Lindsay experienced worsening severe pain and spasms during November 25, 2019. *Id.* ¶ 5.

The emergency room doctor's impressions included prostate hypertrophy, acute urinary retention, atonic bladder, neurogenic bladder, bladder mass, and prostate cancer. *Id.* ¶ 6.

Emergency room staff attempted to insert an 18-gauge catheter without success. *Id.* ¶ 7. They then tried a 20 French silicone catheter with ultrasound guidance, again without success. *Id.* ¶ 8. After consulting a urologist, a 22 French three-way irrigation catheter was successfully inserted. *Id.* ¶ 9. At 11:17 a.m. Lindsay was taken to surgery. *Id.* ¶ 10. On November 26, 2019, Lindsay experienced more difficulties with the catheters necessitating replacement with a 24 French three-way catheter and insertion of a balloon into his bladder. *Id.* ¶¶ 12-13.

On November 30, 2019, Lindsay was released to the Corrigan infirmary. *Id.* ¶ 14. On December 2, 2019, Lindsay awoke with chest pains and dehydration. *Id.* ¶ 15. When Nurse Amy was making her rounds at 1:00 a.m., Lindsay told her his chest hurt and asked for water. *Id.* Nurse Amy told him water was not distributed until 8:30 a.m. and said he could get water from the toilet if he needed it sooner. *Id.*

Lindsay filed two medical grievances but received no response. *Id.* ¶¶ 16-17. Nurses KC and Andrew refused Lindsay medical treatment for six days at a time on several occasions. *Id.* ¶ 18.

**Discussion**

Although Lindsay submitted his Amended Complaint on the court form, he did not complete the section identifying the relief he seeks. Because Lindsay states that he received surgery to address his condition the Court presumes he seeks monetary damages only and construes all claims as brought against the defendants in their individual capacities.

**Motions to Amend [ECF 13]**

In his first motion to amend, Lindsay seeks reconsideration of the dismissal of his claims against Dr. Pillai. "The standard for granting [a motion for reconsideration] is strict, and

reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted). This District's Local Rules state that: "Such motions will generally be denied unless the movant can point to controlling decisions or data that the court overlooked in the initial decision or order" and require that the motion "be accompanied by a memorandum setting forth concisely the controlling decisions or data the movant believes the court overlooked." D. Conn. L. Civ. R. 7(c)1. In addition, a motion for reconsideration must "be filed and served within seven (7) days of the date of the filing of the decision or order from which such relief is sought." *Id.*

First, Lindsay's motion is not timely. He filed his motion on February 28, 2020, ten days after the court filed the Initial Review Order. Second, Lindsay has not identified any controlling decisions the court overlooked. Lindsay cites a case from the Seventh Circuit Court of Appeals which discusses continuing violations, *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001). Even if this decision were controlling, which it is not, *Adelphia Recovery Tr. v. Bank of Am., N.A.*, No. 05 CIV. 9050 (LMM), 2010 WL 2077214, at *2 (S.D.N.Y. May 14, 2010), it is inapposite. As the court explained in the Initial Review Order, there is no continuing violation claim against Dr. Pillai because there were no allegations that he provided any treatment or ignored any requests for treatment or medical assistance within the limitations period. Accordingly, reconsideration is denied.

In his second motion to amend [ECF 15], Lindsay states that he received information clarifying his medical claims. Lindsay attaches to his motion a letter from the emergency room

doctor clarifying that Lindsay did not have a hole in his bladder from the attempted catheter insertion at Corrigan. The doctors performed a cystoscopy and inserted a catheter. During the procedure they noted an enlarged prostate which was presumed to be the source of the bleeding. Doc. No. 15 at 4. Although Lindsay entitled his motion as "Motion: Rule 15. Amended or Supplemental Pleading (A), (b) and (c)," he submits no amended or supplemental complaint. Attaching the doctor's letter does not amend the complaint. The motion is therefore denied.

**Deliberate Indifference to Medical Needs**

Lindsay claims that all defendants were deliberately indifferent to his serious medical needs, which, if proven, is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to a serious medical need, Lindsay must show both that his need was objectively serious, and that subjectively, the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A condition or need that is objectively serious is one that might produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The defendants also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. They must have been actually aware of a substantial risk that Lindsay would suffer serious harm as a result of their actions or inactions. The defendants "need only be aware of the risk of harm, not intend harm." *Id.*

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Nor does a disagreement over the treatment provided show

6

deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

Lindsay's claim is premised on the allegedly unreasonable delay on the part of the defendants in providing him needed medical care. "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, … ignored a 'life-threatening and fast-degenerating' condition for three days, … or delayed surgery for over two years…." *Demata v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233, 1999 WL 753142 (Table) (2d Cir. 1999); *see also Chance*, 143 F.3d 703 (a delay in treatment does not rise to the level of a constitutional violation unless it involves conduct that evinces "a conscious disregard of a substantial risk of serious harm.") (quoting *Hathaway*, 99 F.3d at 553 (internal quotation marks omitted)).

Here, Lindsay's allegations regarding his prostate and urological concerns are sufficient to plausibly allege an objectively serious medical need.

Lindsay also alleges that his urinary issues, caused by his enlarged prostate gland, were not addressed in a timely manner resulting in serious complications. He alleges that Nurses KC and Andrew failed to provide medical attention for periods of six days at a time, that Nurse Williams failed to ensure that he obtain treatment before the incident resulting in his hospitalization, and Nurse Menoki ignored his claims of chest pain and dehydration. He also alleges that Nurse Shaw's actions and Dr. Feder's failure to supervise her resulted in the emergency trip to the hospital. The allegations as to the involvement of each defendant are not particularly detailed, making it difficult to discern whether Lindsay has plausibly alleged that

7

each acted with the requisite *mens rea*. However, the Court permits the claims against these defendants to proceed for discovery and further development of the record.

**Defendant Correctional Officer Doe**

To obtain an award of damages in a section 1983 action, Lindsay must allege facts showing the personal involvement of each defendant in the alleged constitutional violation. See *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Lindsay includes Correctional Officer John Doe as a defendant. However, he does not mention Officer Doe in his statement of facts and includes no allegations suggesting that Officer Doe was responsible for his medical care. The claim against Officer Doe is dismissed for failure to allege any facts demonstrating his involvement in the purported constitutional violation.

**Orders**

For the foregoing reasons, the claim against Officer Doe is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the deliberate indifference claim against defendants Shaw, Feder, Williams, Manoki, KC and Andrew in their individual capacities.

Lindsay's motion to amend [**Doc. No. 13**] is **GRANTED** to the extent that Lindsay seeks to file the Amended Complaint and **DENIED** to the extent that he seeks reconsideration of the decision dismissing the claims against Dr. Pillai. Lindsay's motion to amend or supplement [**Doc. No. 15**] is **DENIED**.

The court enters the following additional orders.

(1)  **The Clerk shall** verify the current work address for defendants Shaw, Feder, Williams, Manoki, KC and Andrew with the Department of Correction Office of Legal Affairs. **If the Office of Legal Affairs cannot identify defendants RN KC or RN Andrew (it is**

8

**unclear whether this is a first or last name), it shall be Lindsay's obligation to further identify these defendants and advise the court when he has done so.** The Clerk shall mail a waiver of service of process request packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) T**he Clerk shall** send Lindsay a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **October 8, 2020**. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed by **November 8, 2020.**

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If Lindsay changes his address at any time during the litigation of this case, Local

Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Lindsay must give notice of a new address even if he is incarcerated. Lindsay should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Lindsay has more than one pending case, he should indicate all the case numbers in the notification of change of address. Lindsay should also notify the defendants or the attorney for the defendants of his new address.

(9) Lindsay shall utilize the Prisoner Efiling Program when filing documents with the court. Lindsay is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10) The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Lindsay.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of April 2020.

/s/
Kari A. Dooley
United States District Judge